UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JUAN MARQUIS HOLIDAY,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

Case Nos.:  25-cv-00082-AJB;
            17-cr-01370-AJB

**ORDER:**
**1) DENYING PETITIONER'S**
**MOTION TO VACATE, SET ASIDE,**
**OR CORRECT SENTENCE UNDER**
**28 U.S.C. § 2255;**

**2) DENYING PETITIONER'S**
**MOTION TO APPOINT COUNSEL;**
**AND**

**3) DENYING PETITIONER'S**
**MOTION FOR SANCTIONS FOR**
**FRAUD**

**(Doc. Nos. 286; 287; 292)**

Before the Court are three motions filed by Petitioner Juan Marquis Holiday ("Petitioner"): (1) Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("Motion to Vacate"), alleging ineffective assistance of counsel by his attorney,

Douglas C. Brown (Doc. No. 287);[1] (2) Motion to Appoint Counsel (Doc. No. 286); and (3) Motion for Sanctions for Fraud Upon the Court ("Motion for Sanctions") (Doc. No. 292). Respondent the United States (the "Government") filed an opposition to the Motion to Vacate (Doc. No. 290), to which Petitioner replied (Doc. No. 291). The Government also filed an opposition to the Motion for Sanctions (Doc. No. 295), to which Petitioner replied (Doc. No. 305). Having reviewed the parties' briefs and all relevant filings, and for the reasons set forth below, the Court **DENIES** Petitioner's Motion to Vacate, Motion to Appoint Counsel, and Motion for Sanctions.

## I. BACKGROUND

On May 15, 2017, Petitioner was arrested and a four-count complaint was issued, charging Petitioner with two counts of robbery occurring first on April 6, 2017 at Market at the Ranch, and second, on April 20, 2017 at Apollo Liquor store, along with two counts of carrying, brandishing, and discharging a firearm in commission of those robberies. (*See* Doc. Nos. 1, 2, 4.) The same day, Petitioner made his initial appearance before then Magistrate Judge Andrew G. Schopler, who provisionally appointed Federal Defenders to represent Petitioner. (Doc. No. 5.) Two days later, Chase Scolnick appeared as counsel for Petitioner. (Doc. No. 10.)

Over the next year, a grand jury issued an indictment and two superseding indictments as to Petitioner, culminating in the twenty-count Second Superseding Indictment, (Doc. No. 57). (*See also* Doc. Nos. 21, 27.) The Second Superseding Indictment charged Petitioner with a total of ten robberies and attempted robberies occurring from January 5, 2017, to April 22, 2017, along with ten counts of carrying, brandishing, and discharging a firearm in commission of those robberies and attempted

---

[1]    The instant Motions before the Court are filed in both Petitioner's civil case and the underlying criminal case. (*Compare* Doc. No. 1, *Holiday v. United States*, No. 25-cv-00082-AJB (S.D. Cal.) *with* Doc. No. 287, *United States v. Holiday*, No. 17-cr-001370-AJB-1 (S.D. Cal.).) Hereafter, all docket entries refer those in Petitioner's criminal case unless otherwise specified.

robberies.[2] (Doc. No. 57.) On July 13, 2018, Petitioner was arraigned on the Second Superseding Indictment and pleaded not guilty. (Doc. No. 71.)

A five-day jury trial was held before this Court from March 3, 2020, to March 10, 2020. (Doc. Nos. 175, 177, 178, 180, 182.) After approximately a day of deliberations, on March 11, 2020, the jury found Petitioner guilty on all Counts 1–20. (*See* Doc. Nos. 183, 184.) On June 8, 2020, Petitioner was originally sentenced to eighty-five years and ten months. (Doc. No. 208.) However, on March 16, 2023, following the Supreme Court's ruling that an attempted Hobbs Act robbery does not qualify as a crime of violence as a predicate for felony conviction and enhanced sentencing for using a firearm in furtherance of a crime of violence, *see United States v. Taylor*, 596 U.S. 845 (2022), the Court amended Petitioner's sentence to sixty-four years and ten months. (Doc. No. 256.)

Since Petitioner's initial arrest and appointment of counsel, Petitioner had several changes in counsel. First, on July 19, 2017, attorney Linda Lopez replaced Chase Scolnick as lead counsel. (Doc. No. 31.) Then, on August 9, 2017, Joshua J. Jones appeared for Petitioner as co-counsel with Linda Lopez remaining as lead counsel. (Doc. No. 34.) On September 25, 2018, Amrutha N. Jindal joined as co-counsel (Doc. No. 94), and one week later, Joshua J. Jones assumed the role of lead counsel for Petitioner (Doc. No. 95). Approximately one month later, on November 20, 2018, Petitioner made an oral request for new counsel, which the Court granted. (Doc. No. 112.) The Court relieved Amrutha N. Jindal and Joshua J. Jones, and appointed attorney Douglas C. Brown to represent Petitioner. (*Id.*) Douglas C. Brown represented Petitioner for the duration of Petitioner's

---

[2]    The Second Superseding Indictment charged Petitioner with seven counts of robbery occurring on January 5, 2017, at an Arco Gas station ("Arco Station Robbery") (Count 1), January 11, 2017, at a Perry Liquor store (Count 2), Par Liquor store (Count 3), and Greene Cat Liquor store (Count 4); April 6, 2017, at Market at the Ranch (Count 5); April 19, 2017, at a 7-Eleven (Count 6); and April 22, 2017, at Victoria's Mexican Grill (Count 10). (Doc. No. 57 at 1–3, 5.) It separately charged Petitioner with three counts of attempted robbery occurring on April 20, 2017, at Eastridge Liquor store (Count 7), Apollo Liquor store (Count 8), and G&M Market (Count 9). (*Id.* at 4–5.) The remaining charges were for knowingly using, carrying, and brandishing a firearm in conjunction with the robberies and attempted robberies (Counts 11, 17–20) and for discharging a firearm during a crime of violence (Counts 12–16). (*Id.* at 5–8.)

trial.

On January 13, 2025, Petitioner timely filed the instant § 2255 habeas Motion to Vacate, (Doc. No. 287), and Motion to Appoint Counsel, (Doc. No. 286). On April 2, 2025, Petitioner filed the instant Motion for Sanctions. (Doc. No. 292.)

## II.    MOTION TO VACATE PURSUANT TO 28 U.S.C. § 2255

### A.    Legal Standard

A federal prisoner in custody under a sentence of a court may move to vacate, set aside, or correct the sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). To warrant relief under § 2255, a prisoner must allege a constitutional, jurisdictional, or otherwise "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 783 (1979). If it is clear a petitioner has failed to state a claim, or has "no more than conclusory allegations, unsupported by facts and refuted by the record," a district court may deny a § 2255 motion without an evidentiary hearing. *United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986).

### B.    Petitioner's Ineffective Assistance of Counsel Claims

In the Motion to Vacate, Petitioner asserts five claims, all alleging violations of his Sixth Amendment right to effective assistance of counsel. (Doc. No. 287 at 4–13; Doc. No. 287-1 at 4–11.) The claims center around Mr. Brown's alleged failure to: (1) rebut the chain of custody of DNA evidence recovered near the scene of the January 5, 2017, Arco Station Robbery (Ground 1); (2) object to the special verdict forms (Ground 2); (3) argue that Petitioner's youth be considered in sentencing (Ground 3); (4) poll the jury to ensure the special verdicts were unanimous (Ground 4); and (5) present testimony of an alibi witness (Ground 5). (Doc. No. 287-1 at 4–11.)

"The Sixth Amendment right to counsel is the right to the effective assistance of

counsel, and the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. 668, 669 (1984). To prevail on a claim of ineffective assistance of counsel, a petitioner must satisfy a two-part test outlined in *Strickland*. The Petitioner must show that (1) counsel's representation was deficient such that it "fell below an objective standard of reasonableness," and (2) counsel's deficient performance prejudiced the petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687–88, 694.

The first prong of the *Strickland* test requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *see also Strickland*, 466 U.S. at 689 (noting there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance").

The second prong requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Unless the petitioner can make a showing for both *Strickland* prongs, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process[.]" *Id.* at 687.

1. Alleged Failure to Challenge Chain of Custody of DNA Evidence (Ground 1)

Petitioner argues his trial counsel was deficient in failing to adequately challenge the "vague" chain of custody of DNA evidence collected on January 5, 2017, "outside the scene of one of the robberies, an Arco gas station, in the very neighborhood where

[Petitioner] lived." (Doc. No. 287-1 at 4.) Petitioner asserts that "it was obvious the chain of custody between the officer that discovered [the DNA evidence]," Officer Kyle Rack, and the officer who retrieved the DNA evidence, Officer Salvador Torres, "had not been established or maintained," and that Officer Torres "did not testify at trial." (Doc. No. 287-1 at 5.) Petitioner also takes issue that Office Torres "does not appear in any of the chain of custody documents[.]" (*Id.*) In response, the Government asserts that it established a proper chain of custody, cites to the trial transcript where Office Torres did in fact testify at trial, (Doc. No. 290 at 14 (citing Doc. No. 191 at 63–72)), notes that Petitioner's counsel cross-examined all four of the prosecution's witnesses related to the discovery, collection, and verification of the DNA evidence, and raises that Petitioner does not challenge the authenticity of the DNA evidence. (Doc. No. 290 at 14.)

The Government established a clear chain of custody of the DNA evidence. First, Officer Rack's testimony at Petitioner's trial reveals that he discovered a black plastic bag near the site of the Arco Station Robbery, secured the scene, and notified the case agent, Officer Torres, of the bag. (Doc. No. 191 at 28:16-23, 30:16-20, 31:6-7, 35:7-6.) Petitioner's attorney, Mr. Brown, cross-examined Officer Rack at Petitioner's trial. (*Id.* at 35.) Second, on March 4, 2020, contrary to Petitioner's allegations, Officer Torres testified at trial that Officer Rack notified him of the secured bag, so Officer Torres, while wearing gloves so as not to contaminate any evidence, collected and impounded the evidence containing the DNA. (*Id.* at 68:14–69:19.) Petitioner's attorney also cross-examined Officer Torres. (*Id.* at 69.) Third, a crime scene specialist, Ms. Ally Southerland, testified regarding the anti-contamination procedures and techniques she employed to process the DNA sample found on the secured plastic bag. (*Id.* at 38–39.) Petitioner's attorney cross-examined Ms. Southerland. (*Id.* at 40.) Finally, criminalist Tess Hemmerling, a DNA expert, testified regarding the quality control measures she took in analyzing the DNA sample to prevent contamination and ensure the accuracy of her findings. (*Id.* at 54.) Mr. Brown then cross-examined Ms. Hemmerling. (*Id.* at 57.) In sum, the record establishes the chain of custody of the DNA evidence on the plastic bag discovered by Officer Rack,

collected by Officer Torres, and examined by Ms. Southerland and Ms. Hemmerling. (*See generally* Doc. No. 191.) Petitioner does not dispute the authenticity or accuracy of the DNA evidence, (*see* Doc. No.287-1), which established Petitioner's DNA was on the plastic bag, and the weight of the evidence was evaluated by the jury in their determinations with regard to Count 1.

Furthermore, Petitioner fails the second part of the *Strickland* test as he provides no evidence that any additional objection by his counsel to the chain of custody would have led to a different outcome. The individuals involved in the collection of the evidence and its impoundment took the stand, testified with regard to the handling of the evidence, and were cross-examined by Petitioner's counsel. (*See* Doc. No. 191.) Without any evidence demonstrating that further challenge would have led to an alternative outcome, Petitioner's claim fails to meet the *Strickland* test. *Strickland*, 466 U.S. at 687–88, 694.

Accordingly, the Court **DENIES** the instant Motion with respect to allegations Mr. Brown deficiently challenged the chain of custody of DNA evidence found at the scene of the January 5, 2017, Arco Station Robbery.

### 2. Alleged Failure to Object to Special Verdict Forms (Ground 2)

Petitioner next asserts Mr. Brown was ineffective for failing to object to the formatting of the verdict forms. (Doc. No. 287-1 at 7.) Petitioner claims that the verdict forms were "manipulated in such way as to give the impression to the [j]ury that if they found [P]etitioner guilty of the overhead [robbery] count, they had to find [P]etitioner [guilty] of the underlying special verdict[,]" or associated firearms count. (*Id.*) Relatedly, Petitioner states that his counsel "failed to object to [the] [C]ourt not giving the Jury an instruction to complete the special verdict, only if they found [P]etitioner guilty of the general verdicts." (*Id.* at 8.) Finally, Petitioner argues that in the verdict forms, the Government "re-arranged the order of the counts and listed them out of chronological order," which Petitioner claims is "linked to constructive amending." (*Id.* at 7.)

The Court addresses Petitioner's challenges in turn. First, Petitioner presents no evidence that the verdict forms misled the jury beyond his own speculation. As the

Government asserts, to the extent the jury was confused by the verdict forms, they could have asked the Court for clarification, but the jury declined to do so. (Doc. No. 290 at 16.) Additionally, the verdict forms are clear on their face as to what the appropriate inquiry is for each of the complex charges brought in the case. (*See* Doc. No. 184.) For example, for each underlying count, the jury was given the option of finding Petitioner "Guilty" or "Not Guilty," (*see id.* at 1–2), and each special verdict begins with, "If the jury finds the defendant guilty of [the respective Count], answer the following [special verdict] questions . . . ." (*See* Doc. No. 184 at 2–10.) Accordingly, because the verdict forms are clear, and Petitioner fails to present any evidence of jury confusion regarding the verdict forms, or any errors in the forms themselves, the Court rejects Petitioner's claim that his counsel was deficient for failing to object to the verdict forms. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.")

Second, as the Government argues, Petitioner's constructive amendment claim is misplaced. (*See* Doc. No. 290 at 16.) "A constructive amendment occurs when the charge the jury considers is so altered as to charge a different offense from that found in the indictment." *United States v. Corrales-Quintero*, 171 F. App'x 33, 35 (9th Cir. 2006). To assess "whether the special verdict form constituted a constructive amendment of the indictment," the Court "look[s] to both the special verdict form and the accompanying jury instructions to determine if the jurors were instructed to convict [Petitioner] of the same [crime] that was charged in the original indictment." *Id.* Here, the analysis is simple. There were no changes to the charges and the special verdict forms aligned with the charging document at the time of trial. (*Compare* Doc. No. 57 *with* Doc. No. 184.) Without any specific facts or support to demonstrate constructive amendment, all Petitioner relies on is speculation, which is insufficient to merit relief. *See Borg*, 24 F.3d at 26.

Accordingly, the Court **DENIES** the instant Motion with regard to Petitioner's allegations that Mr. Brown deficiently challenged the special verdict forms.

/ / /

3.  <u>Alleged Failure to Consider Petitioner's Youth in Sentencing (Ground 3)</u>

In Petitioner's third claim of ineffective assistance of counsel, Petitioner argues his counsel was ineffective for failing to raise Petitioner's youth as a mitigating factor in sentencing. (Doc. No. 287-1 at 8–9.) Petitioner further alleges, "[t]he record is devoid of any indication that the [P]etitioner's age at the time of offense was considered at sentencing." (*Id.* at 9.) Petitioner states he was twenty-five years old when the offenses occurred. (*Id.* at 8.)

Petitioner's argument lacks merit. First, the Court sentenced Petitioner to the mandatory minimum sentence for each of the charges, so any additional mitigating factors could not have lowered his sentence. (*See* Doc. Nos. 256; 264 at 7–13.) Additionally, Petitioner's age was well-known to the Court, to counsel, and to the United States Probation Office, and was set forth in Petitioner's Presentence Investigation Report ("PSR"). (Doc. No. 194.) Petitioner presents no basis to demonstrate that the Court failed to consider the PSR, and to the contrary, Petitioner's counsel's receipt and review of the PSR with Petitioner was discussed at the sentencing hearing. (Doc. No. 254.) Finally, even if Petitioner's sentence could be further mitigated, which it cannot be, Petitioner was an adult at age twenty-five at the time of the offenses, so he would not be eligible for a decreased sentence based on age. *See Miller v. Alabama*, 567 U.S. 460, 471 (2012) ("children are constitutionally different from adults for purposes of sentencing[.]")

The cases Petitioner cites in support of his argument that "it is now commonly accepted that youth at the time of offense should be considered at sentencing," (Doc. No. 287-1 at 8), either involve juvenile defendants or are inapposite. *See e.g.*, *United States v. Briones*, 18 F.4th 1170, 1171, 1174 (9th Cir. 2021) (district judge considered that defendant was seventeen years old at time of offense); *Khalifa v. Cash*, 594 F. App'x 339, 345 (9th Cir. 2014) (dissenting opinion advocating that defendant's fifteen-year-old age and minor involvement in the crime "should have been considered" in sentencing); *see also United States v. Gonzales*, 981 F3d. 11 (1st Cir. 2020) (declining to extend *Miller* beyond protection of juvenile offenders and finding discretionary sentence of life without parole

25-cv-00082-AJB; 17-cr-01370-AJB

for twenty-year old offender did not violate the Eighth Amendment). Again, because Petitioner was twenty-five years old at the time of the offenses, and not a minor, the law does not support additional consideration of Petitioner's age at sentencing. Because the Court does not find Mr. Brown's performance deficient and Petitioner was not prejudiced by an omission to further raise Petitioner's age, Petitioner's claim fails the first and second prongs of the *Strickland* test. *See Strickland*, 466 U.S. at 687, 694.

Accordingly, because Petitioner was an adult at the time of the offenses and received the mandatory minimum sentence for each offense, the Court **DENIES** the instant Motion with respect to allegations that Mr. Brown deficiently failed to raise Petitioner's age at the time the offenses occurred.

4. Alleged Failure to Poll the Jury to Confirm Unanimous Verdicts (Ground 4)

In Petitioner's fourth claim, Petitioner argues that his trial counsel was ineffective for failing to poll the jury to ensure that the special verdicts were unanimous. (Doc. No. 287-1 at 9.) He claims that as the special verdict stipulations were being read, Petitioner noticed a juror "shaking his head 'No' as if in disagreement with the special verdicts." (*Id.*) In response, the Government states that Petitioner's claim is speculative. (Doc. No. 290 at 18.)

"Any criminal defendant . . . being tried by a jury is entitled to the uncoerced verdict of that body." *Lowenfield v. Phelps,* 484 U.S. 231, 241 (1988). "The parties may poll the jury in order 'to ascertain for a certainty that each of the jurors approves of the verdict as returned.'" *Harrison v. Gillespie*, 640 F.3d 888, 899 n.7 (9th Cir. 2011) (quoting *Humphries v. Dist. of Columbia*, 174 U.S. 190, 194 (1899)). "Such a poll exists primarily to dispel uncertainty about the jury's verdict." *Harrison*, 640 F.3d at 899 n.7.

Here, while Petitioner's counsel did not ask for each juror to be individually polled, the Court did. (*See* Doc. No. 223 at 15:18–17:17 ("Let's go ahead and individually poll the panel on that question.")) Each and every juror was specifically asked if the verdict was theirs, and the Court accepted each juror's affirmation and recorded the special verdict.

(*Id.*) Additionally, Petitioner presents no evidence that a juror was shaking his head, "no" as if in disagreement. (*See* Doc. No. 287-1 at 9.) However, even if the juror had engaged in such behavior, the Court's supervision over the verdict and decision to individually poll the jury eliminated any uncertainty about the unanimity of the verdict. *See Harrison*, 640 F.3d at 899 n.7.

Because the Court polled the jury and Petitioner does not provide any evidence of juror confusion, Petitioner fails to carry his burden under *Strickland*'s first prong to demonstrate that his counsel acted unreasonably. *See McCarthy v. Maass*, 145 F.3d 1339 (9th Cir. 1998) ("[D]efense counsel did not act below the standard of reasonableness by not polling the jury" where "jury was not confused but understood the instructions.") Petitioner's claim also fails under *Strickland*'s second prong given that the Court polled the jury, so Petitioner was not prejudiced by any alleged omission from his counsel. *See Strickland*, 466 U.S. at 687–88, 694.

Accordingly, the Court **DENIES** the instant Motion with respect to allegations Mr. Brown deficiently failed to poll the jury to ensure that the special verdicts were unanimous.

### 5.  Alleged Failure to Present Testimony of Alibi Witness (Ground 5)

Petitioner's final ground of his ineffective assistance of counsel claim is that Mr. Brown failed to call Petitioner's alibi witness, Petitioner's wife, to testify at his trial regarding Petitioner's location on the night of the January 5, 2017, Arco Station Robbery. (Doc. No. 287-1 at 10.) Petitioner asserts that he "notified counsel, early in the defense preparation that he had an alibi for the date and time of the alleged Arco gas station robbery [on January 5, 2017] . . . [t]hat he had been home with the mother of his children[.]" (*Id.*) Petitioner states, "trial counsel Brown spoke directly to the witness, Brijonna McNeely, and verified [P]etitioner's alibi, yet never raised it." (*Id.*) Petitioner continues, "Brown admitted he had failed to give the proper notice of [P]etitioner's alibi defense." (*Id.*) In support of Petitioner's argument, Petitioner filed a declaration from Ms. McNeely stating, "from January[] 4, 2017, until at least the early evening of January 6, 2017, I was in the company of [Petitioner]. During that time[,] we cohabitated as man and wife." (Doc. No.

287-2 at 4.) Ms. McNeely provides no further detail about the activities of Petitioner during that two-day time frame. (*Id.*) Ms. McNeely also confirmed speaking with Mr. Brown, telling him she "was willing to testify on [Petitioner's] behalf." (*Id.*) According to Ms. McNeely, Mr. Brown thanked her, "and said he would be in touch if needed," but she "never spoke to him again in regards to that." (*Id.*) In response, the Government retorts that Petitioner's claim is baseless because trial counsel Brown investigated Ms. McNeely's testimony but made a strategic, tactical decision not to call her to the stand, and that her declaration lacks specificity and credibility. (Doc. No. 290 at 18–19.)

"Few decisions a lawyer makes draw so heavily on professional judgment as whether or not to proffer a witness at trial." *Lord v. Wood*, 184 F.3d 1083, 1095 (9th Cir. 1999). While the standard of review to assess the reasonableness of counsel's performance is "highly deferential," *Kimmelman*, 477 U.S. at 381, "where . . . a lawyer does not put a witness on the stand, his decision will be entitled to less deference than if he interviews the witness." *Lord*, 184 F.3d at 1095 n.8. "The reason for this is simple: A lawyer who interviews the witness can rely on his assessment of their articulateness and demeanor-factors we are not in a position to second-guess." *Id.*

Absent from the parties' original briefing was an affidavit or declaration from Mr. Brown regarding whether he interviewed Ms. McNeely prior to Petitioner's trial. (*See* Doc. No. 307.) In the interest of compiling a complete record, on June 10, 2025, this Court found that if Petitioner wished to maintain his ineffective assistance of counsel claim on this last ground, good cause existed to waive the attorney-client privilege between Petitioner and his former counsel with respect to their communications concerning whether Ms. McNeely would be called as an alibi witness to testify as to Petitioner's location the evening of the January 5, 2017, robbery. (*Id.*) Petitioner filed a letter stating that he did not object to the partial waiver because he seeks to maintain his ineffective assistance of counsel claim. (Doc. No. 312.)

Mr. Brown filed a declaration in response. (Doc. No. 315.) He states that prior to trial, "Brijonna McNeely was interviewed by me, my investigator, and by Federal Defender

lawyers and investigators[,]" including on June 15, 2018, October 26, 2018, November 2018, January 5, 2019, March 14, 2019, and June 11, 2019. (*Id.* ¶¶ 3, 6.) Brown hired an investigator "for the specific purpose of investigating any possible alibi." (*Id.* ¶ 3.) He further declares he "spoke with Ms. McNeely by telephone and in person about the case and specifically if she could supply an alibi." (*Id.*) Brown states, "Ms. McNeely denied having an alibi for the Arco robbery, indicating the Petitioner was likely at work." (*Id.*) Moreover, Mr. Brown states, "Petitioner was interviewed and denied having an alibi for the Arco robbery." (*Id.* ¶ 4.) Finally, he states, "[f]or the entire time I represented Petitioner, he did not suggest an alibi for the Arco robbery. Nor did Ms. McNeely. . . . The first time I was made aware of any alibi witness or defense was when I received the instant court order." (*Id.* ¶¶ 6–7.)

In addition to Mr. Brown's Declaration stating that he interviewed Ms. McNeely, both Petitioner and Ms. McNeely concede that Mr. Brown spoke with Ms. McNeely about Petitioner's alibi. (Doc. No. 287-1 at 10 (Petitioner declaring, "trial counsel Brown spoke directly to the witness, Brijonna McNeely, and verified [P]etitioner's alibi, yet never raised it.")[3]; *see also* Doc. No. 287-2 at 4.) Having interviewed Ms. McNeely about any potential alibi for Petitioner, deference to Mr. Brown's professional judgment is merited, *see Lord*, 184 F.3d at 1095, and Mr. Brown's performance did not fall below an "objective standard of reasonableness[,]" *Strickland*, 466 U.S. at 688; *see also Jones*, 2008 WL 505230, at *13 ("Counsel's concerns about the credibility of Petitioner's alibi witnesses and the viability

---

[3]        Petitioner later contradicts his initial declaration, stating that his counsel "explored nothing, and thus had nothing to base a tactical decision on . . . he [would have] had to talk to [McNeely] first, and see what she would have been able to testify to, and that did not happen here." (Doc. No. 291 at 9.) Petitioner's conflicting assertions, first claiming that Brown "verified [P]etitioner's alibi[,]" (Doc. No. 287-1 at 10), and then stating that Brown did not talk to her, (Doc. No. 291 at 9) only weaken Petitioner's credibility. "A claim of failure to interview a witness may sound impressive in the abstract, but it cannot establish ineffective assistance when the person's account is otherwise fairly known to defense counsel." *See Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986) (quoting *United States v. Decoster*, 624 F.2d 196, 209 (D.C. Cir. 1976)). Here, both Petitioner and Ms. McNeely admit to speaking with Brown about her alibi, so Petitioner's later-in-time claim that Brown failed to speak with Ms. McNeely rings hollow.

of the defense is a strategic reason for not presenting the defense at trial."); *see also* *Siripongs v. Calderon*, 133 F.3d 732, 735 (9th Cir. 1998) ("[A]ccomplice defense was not deemed credible enough for presentation to the jury, and we have no basis to fault this tactical judgment.")

Petitioner has also not adequately demonstrated that he was prejudiced by Ms. McNeely not testifying. As an initial matter, Ms. McNeely, as Petitioner's wife, is a family member of Petitioner, and therefore "lack[s] the inherent credibility" of a disinterested witness. *See Jones v. Woodford*, No. CIV. 03CV1463J(RBB), 2008 WL 505230, at *59 (S.D. Cal. Feb. 25, 2008) ("Here, the alibi witnesses are all family members or friends of Jones, so they lack the inherent credibility of the disinterested witnesses in *Lord*.") Additionally, Ms. McNeely's declaration includes only a vague assertion that she was with Petitioner for a two-day period encompassing the January 5, 2017, Arco Station Robbery. (Doc. No. 287-2 at 4 ("That from January[] 4, 2017, until at least the early evening of January 6, 2017, I was in the company of [Petitioner].")) Without specifying where Petitioner was at the exact time of the Arco Station Robbery, and why he could not have robbed the Arco station, Petitioner asks the Court to speculate as to the content of Ms. McNeely's testimony. *See Borg*, 24 F.3d at 26 ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.") Finally, it would be difficult for any counsel to objectively verify Ms. McNeely's testimony given the overwhelming evidence against Petitioner with respect to the Arco Station Robbery. Petitioner's DNA was found on the Arco station black plastic bag (Doc. No. 191 at 52:4 – 56:15), which the Arco station cashier testified filling with money and providing to Petitioner while Petitioner held her at gunpoint (*see id.* at 3:9–6:11; 13:10–14:5). Furthermore, the video footage of the Arco Station Robbery aligns with the modus operandi of the remaining robberies—the robber brandished a handgun with a laser sight attached to the trigger guard and was wearing a hooded sweatshirt with the hood drawn tightly around his face. (Doc. No. 194 at 6.) Therefore, it is doubtful that the alibi witness's testimony would have changed the outcome of Petitioner's trial. Petitioner's claim

therefore falls short of satisfying *Strickland*'s second prong. *See Strickland*, 466 U.S. at 687–88, 694.

Accordingly, because it is undisputed that Petitioner's counsel interviewed Petitioner's alibi witness and made the strategic decision not to call her to testify, and Petitioner fails to show prejudice, the Court **DENIES** the instant Motion with respect to allegations Mr. Brown deficiently failed to call Petitioner's alibi witness to the stand.

### III.    MOTION TO APPOINT COUNSEL

In a separate motion, Petitioner requests that the Court appoint counsel. (Doc. No. 286.) "[T]he protections of the Sixth Amendment right to counsel do not extend to either state collateral proceedings or federal habeas corpus proceedings." *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). However, the Court may provide a financially eligible § 2255 petitioner with representation when "the interests of justice so require . . . ." 18 U.S.C. § 3006A(a)(2)(B). "Unless an evidentiary hearing is required, the decision to appoint counsel is within the discretion of the district court." *Knaubert v. Goldsmith*, 791 F.2d 722, 728 (9th Cir. 1986); *cf.* R. 8(c), Rules Governing Section 2255 Proceedings ("If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A.").

A district court must hold an evidentiary hearing before denying a § 2255 motion, unless it is conclusively shown that the petitioner is entitled to no relief. 28 U.S.C. § 2255(b); *see also Hendricks v. Vasquez*, 908 F.2d 490, 491 (9th Cir. 1990) ("Summary dismissal is appropriate only where the allegations in the petition are 'vague or conclusory' or 'palpably incredible,' or 'patently frivolous or false.'") (quoting *Allison*, 431 U.S. at 75–76). However, if it is clear the petitioner has failed to state a claim, or has "no more than conclusory allegations, unsupported by facts and refuted by the record," a district court may deny a § 2255 motion without an evidentiary hearing. *Quan*, 789 F.2d at 715. As discussed above, the Court finds that Petitioner has failed to state a claim on all grounds. The Court finds that an evidentiary hearing is not required and, accordingly, **DENIES** Petitioner's request for appointment of counsel.

## IV.    MOTION FOR SANCTIONS

In response to the Government's opposition brief to Petitioner's Motion to Vacate, Petitioner filed a Motion for Sanctions against the Government pursuant to Federal Rule of Civil Procedure 11(c). (Doc. No. 292.) Petitioner argues that the Government made four misrepresentations in its opposition brief that merit Rule 11 sanctions: (1) the Government did not attach a "memorandum of points and authorities" or any exhibits despite representing that its response "is based upon the attached memorandum of points and authorities, exhibits, and the files and records in the underlying criminal case. . . [,]" (*id.* ¶ 4; Doc. No. 290 at 1); (2) the Government stated that "Holiday seems to imply that the DNA results were indeed accurate," which Petitioner disputes, (Doc. No. 292 ¶ 5; Doc. No. 290 at 14); (3) the Government asserted that Petitioner "even admits that after investigating [Petitioner's alibi witness's] claim, 'it would not have made much of a difference . . .,'" which Petitioner finds "preposterous," (Doc. No. 292 ¶ 6; Doc. No. 290 at 19 (quoting Doc. No. 287-2 at 3)[4]); and (4) the Government misstated the date it mailed its response to Petitioner on its certificate of service, (Doc. No. 292 ¶ 7).

### A.    Legal Standard

Federal Rule of Civil Procedure 11 provides in pertinent part, that when a party presents a signed paper to a court, that party is certifying that to the best of their "knowledge, information and belief, formed after an inquiry reasonable under the circumstances ... the claims, defenses, and other legal contentions are warranted by existing law or by nonfrivolous argument for extending, modifying, or reversing existing law or for

---

[4]    Petitioner also characterizes the Government's citation, "*See Deft. Motion*, 287- at 3," (Doc. No. 290 at 19), as a citation to a "'ghost' location." (Doc. No. 292 ¶ 6.) In response, the Government states that it "meant to cite to '287-2 at 3[]'" and its "error was a typo." (Doc. No. 295 at 6.) While rampant typographical errors can be considered in a Rule 11 sanctions analysis, *see Ludyjan-Woods v. Am. Mortg. Exp. Corp.*, No. 12CV2892-LAB WMC, 2013 WL 693065, at *2 (S.D. Cal. Feb. 26, 2013) (citing *Hickey v. Scott,* 738 F.Supp.2d 55, 73 (D.D.C.2010)), the Court does not find that the Government's single incomplete citation rises to the level of warranting Rule 11 sanctions.

establishing new law." Fed. R. Civ. P. 11(b)(2). Sanctions under Rule 11(c) are warranted only when there has been a violation of Rule 11(b), *i.e.*, when a party files a paper that is frivolous, legally unreasonable, without factual foundation, or is otherwise brought for an improper purpose. *Warren v. Guelker*, 29 F.3d 1386, 1388 (9th Cir. 1994) (citing *Conn v. Borjorquez*, 967 F.2d 1418, 1420 (9th Cir. 1992); *Operating Engrs. Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988)). A filing is "frivolous" when it is "both baseless and made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990). A filing is made for an improper purpose if it was intended "to harass, cause unnecessary delay, or needlessly increase the cost of litigation[.]" Fed. R. Civ. P. 11(b)(1). Either improper purpose or frivolousness is sufficient to sustain an award of sanctions under Rule 11(c). *Townsend*, 929 F.2d at 1362.

A finding of subjective bad faith is not required under Rule 11. *See Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994) ("Counsel can no longer avoid the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head."). If the court determines a Rule 11 violation occurred, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

**B.    Discussion**

The Court finds that none of the four bases proffered by Petitioner warrant Rule 11 sanctions against the Government.

### 1.    Failure to Attach Exhibits (Ground 1)

Petitioner first asserts that the Government engaged in fraud upon the court by stating in the first paragraph of its opposition brief that the brief was based upon "the attached memorandum of points and authorities" and "exhibits" when Petitioner contends, "no memorandum of points and authorities, or exhibits were attached." (Doc. No. 292 at 2; Doc. No. 290 at 1.) The Government responds that "a memorandum of points and authorities consists of a statement of facts, an explanation of the relevant law, arguments, and a conclusion" and that "is nearly the whole of the United States' response." (Doc. No.

295 at 4.) The Government stipulates that while it is true that no exhibits were attached to its response, it's inclusion of the word, "exhibits" was "an editing error – not a 'fraud upon the court.'" (*Id.*)

The Court agrees with the Government. The Government's response brief included a substantial "relevant facts" section that cited to the record, (Doc. No. 290 at 2–11), which preceded its "argument" that cited to relevant legal authority and case law, (*id.* at 12–23). For all intents and purposes, the Government's brief could be characterized as a "memorandum of points and authorities," so no Rule 11 violation exists. As to Petitioner's second argument that the Government did not include any exhibits despite stating that exhibits were attached, the Court considers the Government's statement a minor violation. Petitioner does not allege any prejudice as a result of the misstatement, nor does the Court find that any exists. Because "Rule 11 is not intended to be used against attorneys for minor violations[,]" *Art Attacks Ink, LLC v. MGA Ent., Inc.*, No. 04CV1035 J (BLM), 2006 WL 8439887, at *8 (S.D. Cal. June 21, 2006), the Government's editing error does not warrant Rule 11 sanctions.

2. <u>Government's Arguments Regarding Petitioner's View on Accuracy of DNA Evidence & Saliency of Alibi Witness (Grounds 2 & 3)</u>

Petitioner next takes issue with two of the Government's arguments. First, Petitioner characterizes the Government's statement, "Holiday seems to imply that the DNA results were indeed accurate," (*see* Doc. No. 290 at 14), as "a lie," asserting that "at no time has the [Petitioner] made any such implication." (Doc. No. 292 ¶ 5.) In response, the Government reiterates the basis for its argument. In Petitioner's Motion to Vacate, Petitioner argued "[b]ecause the [Petitioner] lives in the area where the bag was allegedly found, the source of the DNA, and insurance of noncontainimation [sic], or touch contamination, was crucial[,]" (Doc. No. 287-1 at 6), potentially implying that Petitioner's DNA may have been recovered from the bag because he "lives in the area[,]" but someone else robbed the Arco gas station. (Doc. No. 295 at 5.) The Court finds the Government's inference reasonable and nonfrivolous.

Second, Petitioner finds it "preposterous" that the Government asserted that Petitioner "even admits that after investigating [Petitioner's alibi witness's] claim, 'it would not have made much of a difference . . . .'" (Doc. No. 292 ¶ 6; Doc. No. 290 at 19 (quoting Doc. No. 287-2 at 3).) The Government responds that it made this argument because "[t]o concede that [Petitioner's] counsel said the alibi defense would not have made much of a difference severely undermines the ineffective assistance of counsel claim . . . ." (Doc. No. 295 at 6.) The Government also concedes, "[t]o be fair, the United States could have better delineated that Holiday was admitting that it was his attorney who said the alibi defense would not have made much of a difference," (*id.*), and not Petitioner himself. The Court agrees with the Government's concession that the Government could have been clearer in its language, (*see* Doc. No. 287-2 at 3), but that its argument was nonfrivolous and not intended to harass.

In sum, while Petitioner may disagree with the Government's framing of these two arguments, disagreement with an argument reasonably constructed from facts in the record or in response to Petitioner's own motion do not warrant Rule 11 sanctions. *See Psaila v. Girardi*, No. CV 23-07120-MWF (SKX), 2024 WL 5341340, at *1 (C.D. Cal. Dec. 4, 2024) (declining to impose Rule 11 sanctions because counsel's "disagreement with the inferences that [opposing] counsel drew from the alleged facts are not reasonable grounds for concluding the [pleading] is factually baseless.") Additionally, Petitioner was not prejudiced by the Government's arguments because Petitioner had the opportunity to respond in his traverse. Rule 11 sanctions are not warranted.

### 3.  Certificate of Service (Ground 4)

Petitioner's final complaint is that the Government's certificate of service accompanying the Government's response to Petitioner's Motion to Vacate indicated that the Government's response was mailed to Petitioner on "February 18, 2025," but it was electronically filed on "February 16, 2025," and postmarked, "February 20, 2025," which Petitioner characterizes as "more fraud upon the court." (Doc. No. 292 at 3.) In response, the Government states that the undersigned Assistant United States Attorney electronically

filed the Government's response on February 16, 2025, a Sunday, and had arranged for the response to be mailed to Petitioner on Tuesday, February, 18, 2025, which was the first business day after the response was filed (February 17, 2025, was a federal holiday). (Doc. No. 295 at 6–7; *see also* Doc. No. 295-1.) The Government further responds, due to an "administrative processing error," its response was not actually mailed until February 19, 2025, and then postmarked the following day. (Doc. No. 295 at 7; *see also* Doc. No. 295-3.) The Government "concedes that an amended or corrected certificate should have been filed and apologizes for not doing so[,]" but that "there was certainly no intent to mislead the Court or [Petitioner]. . ." (Doc. No. 295 at 7.) In his reply, Petitioner responds, "The [G]overnment's 'apology' is the clearest indicator that there is certainly [a] basis for sanctions." (Doc. No. 305 at 1 (internal quotation marks omitted).)

Nothing before the Court indicates that the Government's administrative processing error was made in bad faith or is anything besides an inadvertent mistake. Additionally, Petitioner does not argue that he was prejudiced by the two-day delay. (*See* Doc. Nos. 292, 305.) Nevertheless, because Petitioner complied with Rule 11's twenty-one day safe-harbor provision by notifying the Government of his intent to file a motion for sanctions because of the date error on the certificate of service, (*see* Doc. No. 292 at 6), the Government should have noticed the error and filed a corrected certificate of service. *See Bonadeo v. Lujan*, 748 F. Supp. 2d 1268, 1273 (D.N.M. 2009) ("The Court is not minimizing that fact that counsel for the Defendants should have noticed the error and are responsible for filing pleadings which are accurate.") Especially in consideration that Petitioner is proceeding *pro se*, the Government is advised to be more attentive in the future.

Looking at the totality of the circumstances, the Court finds that the Government's error "was not so inexcusably reckless as to warrant sanctions." *Id.* (declining to impose Rule 11 sanctions where defendants' certificate of service stated incorrect date where there was no indication of bad faith and Plaintiff was not prejudiced); *see also Scott v. Stephens*, No. C.A. C-06-108, 2007 WL 1522622, at *2 (S.D. Tex. May 23, 2007) (declining to

impose Rule 11 sanctions where defendants' certificate of service was dated three days prior to postmark date where there was no indication it was intentional "but instead, was simply an oversight and mistake" and "plaintiff suffered no harm as a result"). Because "Rule 11 is not intended to be used against attorneys for minor violations[,]" *Art Attacks Ink, LLC*, 2006 WL 8439887, at *8, the Court does not impose sanctions on the Government for the date error in its certificate of service.

Accordingly, the Court **DENIES** Petitioner's Motion for Sanctions and **ORDERS** the Government to file a "Notice of Errata" correcting the service date on its certificate of service.

## V. CERTIFICATE OF APPEALABILITY

Lastly, "[u]nder the Antiterrorism and Effective Death Penalty Act of 1996, there can be no appeal from a final order in a § 2255 proceeding unless a circuit justice or judge issues a certificate of appealability." *Welch v. United States*, 578 U.S. 120, 127 (2016) (citing 28 U.S.C. § 2253(c)(1)). A court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "That standard is met when 'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner.'" *Welch*, 578 U.S. at 127 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Having reviewed the record, the Court finds that no reasonable jurist would dispute that Mr. Brown's challenged performance fell within the "wide range of reasonable professional assistance." *See Strickland*, 466 U.S. at 689. The Court therefore **DENIES** a certificate of appealability.

## VI. CONCLUSION

After careful consideration, the Court finds that Petitioner's Motions, the briefs filed in opposition thereto and support thereof, and the record as a whole "conclusively show that [Petitioner] is entitled to no relief." 28 U.S.C. § 2255(b). Accordingly, the Court **DENIES** Petitioner's Motion to Vacate pursuant to 28 U.S.C. § 2255, **DENIES** Petitioner's Motion to Appoint Counsel, and **DENIES** Petitioner's Motion for Sanctions

for fraud upon the Court. The Court **ORDERS** the Government to file a "Notice of Errata," correcting the date on the certificate of service accompanying its opposition brief to Petitioner's Motion to Vacate.

The Clerk of the Court is instructed to enter judgment in both the underlying criminal case and Petitioner's civil case and close Petitioner's civil case.

**IT IS SO ORDERED**.

Dated:  July 28, 2025

Hon. Anthony J. Battaglia
United States District Judge

25-cv-00082-AJB; 17-cr-01370-AJB